**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

MICHELE DAVIS and VICTORIA BLASZAK,
on behalf of themselves and all other employees
similarly situated,

                  Plaintiffs,                  15-CV-0429-A
                                                    **DECISION AND ORDER**

        v.

2191 NIAGARA STREET, LLC; CLASSIC EVENTS
AT THE LAFAYETTE, LLC; EVENTS AT THE FOUNDRY,
LLC; MOLLY FORD KOESSLER; WILLIAM KOESSLER, and
RIVERFRONT ON THE NIAGARA, LLC, d/b/a ACQUA,

                  Defendants.
_____

      This Fair Labor Standards Act case is before the Court on the Defendants'
objections to Magistrate Judge Leslie G. Foschio's Report and Recommendation, which
recommends denying the Defendants' motion for judgment on the pleadings; and the
Defendants' appeal of Judge Foschio's Decision and Order, which denied the
Defendants' motion for reconsideration of his Report and Recommendation.

      For the reasons stated below, the Court adopts Judge Foschio's Report and
Recommendation and affirms Judge Foschio's Decision and Order. The Defendants'
motion for judgment on the pleadings is therefore denied.

**BACKGROUND**

      Because this case is before the Court on the Defendants' motion for judgment on
the pleadings, the Court "draw[s] all facts—which [the Court] assume[s] to be true unless
contradicted by more specific allegations or documentary evidence—from the [amended]
[c]omplaint and from the exhibits attached thereto," as well as from the answer and the

exhibits attached thereto. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). A motion for judgment on the pleadings is judged by the same standard as a motion to dismiss under Rule 12(b)(6): "[T]he complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 1. Factual background

Defendants William and Molly Ford Koessler own and operate several restaurants and banquet facilities in Buffalo, New York, each of which is also a Defendant in this case. As part of their business, the Defendants "routinely host weddings, bridal showers, anniversary parties, and other special events." Amend. Compl. ¶ 67. The named Plaintiffs were, at different times, employees of the Defendants: Plaintiff Davis worked as an hourly banquet server and as a "banquet captain," and Plaintiff Blaszak worked as an hourly banquet server.

The amended complaint contains six claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and New York Labor Law. The only claim relevant to the pending objections, however, is the Plaintiffs' first claim, which alleges that the Defendants illegally retained gratuities, in violation of New York Labor Law § 196-d.

New York Labor Law § 196-d states, in relevant part, that "[n]o employer . . . shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity *or of any charge purported to be a gratuity for an employee*." (Emphasis added.) In 2008, the New York Court of Appeals considered whether mandatory "service charges"—for example, a 20% charge automatically added

to a banquet customer's bill—fall within the scope of Labor Law § 196-d. The Court of Appeals held that § 196-d "can include mandatory charges when it is shown that employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees." *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008). Following that decision, the New York Department of Labor promulgated a regulation, 12 N.Y.C.R.R. § 146-2.18, to implement Labor Law § 196-d as interpreted by the Court of Appeals.

The regulation creates "a rebuttal presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for 'service' or 'food service,' is a charge purported to be a gratuity," 12 N.Y.C.R.R. § 146-2.18(b), which must be distributed to a restaurant's employees. N.Y. Labor Law § 196-d. The regulation allows a restaurant or banquet facility to retain a mandatory service charge for itself, but it may do so only if it makes a disclosure, in a form prescribed by regulation, that "the administrative charge is for administration of the banquet . . . is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests." 12 N.Y.C.R.R. § 146-2.19(c).

The Plaintiffs allege that, during the time period at issue in the amended complaint, the Defendants' "policy [was] to retain the mandatory charge for service that was added to customer bills at all of Defendants' banquet events," rather than to distribute the charges to the Defendants' employees. Amend. Compl. ¶¶ 72-74. The Plaintiffs further allege that the Defendants "had a policy that failed to clearly identify that the mandatory service charge was not a gratuity or tip." *Id.* ¶ 75. For example, the Plaintiffs allege, "on

catering contracts provided to customers the mandatory charge was referred to as 'service charge'" but "failed to include the necessary disclaimers indicating that these mandatory charges were in fact retained by Defendants and not distributed to banquet service employees." *Id.* ¶ 76. Thus, the Plaintiffs claim that, by operation of Labor Law § 196-d and 12 N.Y.C.R.R. § 146-2.18, these "service charges" were gratuities that should have been distributed to the Plaintiffs and other employees.

### 2. Procedural history

The Defendants moved for judgment on the pleadings as to the Plaintiffs' Labor Law § 196-d claim. *See* Fed. R. Civ. P. 12(c). The Defendants argue that Labor Law § 196-d and its implementing regulation, 12 N.Y.C.R.R. § 146-2.18, are preempted by several provisions of the Internal Revenue Code (IRC) as well as the Fair Labor Standards Act (FLSA).[1]

Judge Foschio, to whom the Court referred this case pursuant to 28 U.S.C. § 636(b)(1), filed a Report and Recommendation that recommends denying the Defendants' motion. The Defendants then filed objections to the Report and Recommendation, as well as a motion asking Judge Foschio to reconsider his Report and Recommendation. In support of their motion for reconsideration, the Defendants submitted an affidavit from a certified public accountant (CPA), which the Defendants claim was intended to "elucidate the error of law and thereby demonstrate for [Judge Foschio] the very serious and, indeed, dramatic injustice resulting from the error of law

---

[1] In their motion to dismiss, the Defendants argue that "[t]he proper result [they] seek through federal preemption also results in harmony between New York Tax Law and New York [L]abor [L]aw." Docket No. 33-1 at 16. The Defendants, however, do not seek dismissal of the Plaintiffs' Labor Law § 196-d claim on this basis. Thus, the Court need not resolve any alleged conflict between New York Tax Law and New York Labor Law.

made by the legal ruling in [his] Report and Recommendation." Docket No. 58 at 3. This Court stayed briefing on the Defendants' objections until Judge Foschio decided the motion for reconsideration.

Judge Foschio denied the Defendants' motion for reconsideration and granted the Plaintiffs' motion to strike the CPA's affidavit. The Defendants then renewed their objections to Judge Foschio's Report and Recommendation, and the Defendants also sought review of Judge Foschio's Decision and Order denying their motion for reconsideration.

The Court reviews Judge Foschio's Report and Recommendation *de novo*. 28 U.S.C. § 636(b)(1). The Court reviews Judge Foschio's Decision and Order to determine whether it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); L. Civ. R. 72(a).

## DISCUSSION

### 1. The collection and disbursement of service charges under the IRC and Labor Law § 196-d

Understanding the Defendants' preemption arguments requires an understanding of the statutory and regulatory framework governing the collection and disbursement of "service charges" under the Internal Revenue Code (IRC) and New York State Labor Law.

The alleged conflict between federal law and state law in this case arises from the manner in which the IRC, together with its implementing regulations and guidance, treat service charges.[2] Since 1959, the IRS has held that, to constitute a "tip," a payment must,

---

[2] The Defendants' preemption argument is based heavily on the alleged preemptive effect of various IRS and United States Department of Labor regulations, as well as informal guidance issued by those agencies. There is at least some question whether a federal agency's regulations and interpretations of statutes—rather than the statutes themselves—can preempt state law. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 581 (2009) (Breyer, J. concurring) (noting that the Supreme Court's decision in *Wyeth* did not resolve this

among other things, be "presented by the customer free from compulsion," and it must be an amount that the customer alone decides—that is, the amount "should not be subject of negotiation or dictated by employer policy." Rev. Rev. 59-252. *See also* Rev. Rul. 2012-18 (reaffirming that the "criteria of Rev. Rul. 59-252 . . . should be applied to determine whether a payment made in the course of employment is a tip or non-tip wages under section 3121 of the Code"). There is no dispute in this case that, when the facts in the amended complaint are viewed in the light most favorable to the Plaintiffs, the service charges at issue are not "tips" for purposes of the IRC.

Rather, the IRS has held—again, since 1959—that charges such as the ones at issue in this case, if ultimately paid to an employer's employees, "are considered as a service charge which constitute wages for Federal employment tax purposes and for the withholding of federal income tax at source." Rev. Rul. 59-252. Specifically, Revenue Ruling 59-252 addressed a situation in which a hotel operated banquet facilities and charged users of such facilities, "in addition to the regular hotel charges, a certain amount (usually a percentage of the regular charges) which [was] added to the hotel bill and collected by the hotel for distribution to the banquet waiters and other employees who rendered service at the affair." *Id.* Even if these charges would ultimately be paid to the banquet facility's staff, Revenue Ruling 59-252 held that the charges were not "tips" but were, instead, "service charges" "which constitute wages." *Id.* Again, the Plaintiffs do not dispute that, if the service charges in this case are distributed to the Defendants' employees—whether under compulsion of New York Labor Law § 196-d or for some other reason—they are "wages," rather than "tips," for purposes of the IRC. *See* 26 C.F.R.

_____

question). Because the Plaintiffs did not raise this argument in opposition to the Defendants' motion, the Court does not consider it.

§ 31.3306(b)-1(b) ("The term 'wages' means all remuneration for employment unless specifically excepted under section 3306(b) . . . or paragraph (j) of [26 C.F.R. § 31.3306(b)-1(b)]."); *id.* § 31.3306(b)-1(j)(3) ("[T]he following types of payments are excluded from wages: Tips or gratuities paid directly to an employee by a customer of any employer, and not accounted for by the employee to the employer.") *See also* I.R.S. Manual 4.23.7.6.2(5) ("A contractually fixed gratuity for catering, banquets, weddings . . . and other events or items is generally considered to be service charges if the amount is distributed or paid to the service staff. . . .  If these amounts are distributed or paid to the employees, then the amounts are non-tip wages subject to withholding.")

The IRC's treatment of service charges as "wages," rather than "tips," is important in this case because of the manner in which the IRC requires that taxes be collected on wages.  If a customer pays a service charge that is to be distributed to the employee, the charge is part of the employee's "wages . . . which are under the control of the employer." 26 C.F.R. § 31.3402(k)-1(a)(1).  The IRC states that "every employer making payment of wages shall deduct and withhold *upon such wages*" an appropriate "tax."  IRC 3402(a)(1) (emphasis added).  Thus, taxes withheld on the service charge-wages must come from the service charge—not from the employee's other wages.

According to the Defendants, then, the alleged conflict between the IRC and Labor Law § 196-d, as interpreted by 12 N.Y.C.R.R 146-2.18, is straightforward: If the service charges are distributed to the Defendants' employees, the service charges are, for purposes of the IRC, non-tip wages.  Federal law therefore requires the Defendants to "deduct and withhold upon such wages" an appropriate "tax."  IRC § 3402(a)(1). According to the Defendants, however, Labor Law § 196-d expressly prohibits what IRC

§ 3402(a)(1) requires: Labor Law § 196-d prohibits the employer from, among other things, "retain[ing] any part" of the service charge. But, the Defendants argue, to comply with the IRC, the employer must "retain" at least part of the service charge as part of the employer's withholding.

## 2. The standards for preemption of state law

The Constitution's Supremacy Clause provides that federal law "shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause codifies the "fundamental [constitutional] principle . . . that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

The decision whether federal law preempts state law "must be guided by two cornerstones": "First, the purpose of Congress is the ultimate touchstone in every pre-emption case"; and "[s]econd, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, [a court] start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quotations, citations, and editorial marks omitted). "In light of this assumption, the party asserting that federal law preempts state law bears the burden of establishing preemption." *In re Methyl Tertiary Butyl Ether Products Liab. Litig.* (*In re MTBE Litig.*), 725 F.3d 65, 96 (2d Cir. 2013).

Federal law may preempt state law in several different ways, but the only type of preemption relevant to this case is conflict preemption. A conflict between federal and state law has "preemptive effect only in two circumstances: first, when 'compliance with

both federal and state regulations is a physical impossibility,' and second, when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 97 (quoting *Arizona v. United States*, 567 U.S. 387, 406 (2012).  The Court discusses the standards for each type of conflict preemption in detail in connection with the Defendants' IRC and FLSA preemption arguments.

### 3. The IRC does not preempt Labor Law § 196-d and 12 N.Y.C.R.R. § 146-2.18

#### A. Impossibility preemption

The Supreme Court's "impossibility" preemption doctrine has taken several forms over the past half-century.  The Court's "narrow[er] view" of impossibility preemption is that "federal law will preempt state law . . . only when 'compliance with both federal and state regulations is a physical impossibility.'" *Id.* (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963)).  The Court's more recent—and "more expansive"—view of impossibility finds a preemptive conflict "when 'state law penalizes what federal law requires' or when state law claims 'directly conflict' with federal law." *Id.* (quoting, in turn, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000) and *Am. Telephone & Telegraph Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 227 (1998)).  Under either formulation, however, "'impossibility preemption is a demanding defense,'" and a court "will not easily find a conflict that overcomes the presumption against preemption." *Id.* (quoting *Wyeth*, 555 U.S. at 573) (brackets in *MTBE* omitted).

Under either standard, compliance with both federal law and state law is not impossible in this case.  First, it is not "a physical impossibility" to comply with both state and federal law.  *Fla. Lime*, 373 U.S. at 142-43.  As Judge Foschio noted, the Defendants can do so by providing customers with the notice mandated by 12 N.Y.C.R.R. § 146-

2.19(c); if they do, the Defendants will not need to distribute service charges to their employees and will thereby avoid any conflict between federal and state law.

For this same reason, the Defendants have not shown that, under the "more expansive" view of impossibility preemption, it is impossible to comply with both federal law and state law. State law in this case does not "penalize[] what federal law requires," nor does it "directly conflict" with federal law. *In re MTBE Litig.*, 725 at 97 (quotation marks omitted). Once again, the Defendants could have complied with both state and federal law by simply including in their invoices the notice required by 12 N.Y.C.R.R. § 146-2.19(c). If they had done so, state law would not, as the Defendants argue, prohibit compliance with federal law.[3]

The Defendants call this solution a "facile dismissal of the problem," Docket No. 61 at 17, but the Defendants fail to recognize that nothing more is required to defeat an impossibility-preemption claim. So long as "there was *any* available alternative for complying with both federal and state law—even if that alternative was not the most practical and cost-effective—there is no impossibility preemption." *In re MTBE Litig.*, 725 at 99 (italics in original). "Impossibility" is not shown merely by demonstrating that

---

[3] In response to this argument, the Defendants rely heavily on the Supreme Court's decision in *Felder v. Casey*, 487 U.S. 131 (1988), which found that a state notice-of-claim statute was preempted by 42 U.S.C. § 1983. The Defendants' reliance on *Felder* is misplaced. *Felder* involved a state law that required a would-be civil rights plaintiff to notify a government official or municipality of his intent to sue the official or municipality before actually doing so. The Supreme Court held that this procedural requirement was "inconsistent in both purpose and effect with the remedial objectives" of § 1983. *Id.* at 153. For the reasons stated below, the Defendants have not made that showing in this case. And, in any event, *Felder* does not stand for the proposition that *every* state-law notice requirement—no matter the form or context in which the requirement arises, and no matter its purpose—is preempted by arguably inconsistent federal law. "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth*, 555 at 565 (quotation marks omitted). It goes without saying that § 1983, the IRC, and the FLSA each have a very different purpose. To say, then, that a state notice-of-claim law is preempted by § 1983 does not say anything about whether a state labor law notice requirement concerning tips is preempted by the IRC and the FLSA.

something is "difficult," nor is state law preempted because a party does not like the options state law gives it for complying with both federal and state law; instead, "impossibility" is shown by demonstrating that "the two standards are expressly incompatible." *Id.* (quotation marks omitted). That is not the case here: The Defendants have offered no reason why they could not have provided the notice required by 12 N.Y.C.R.R. § 146-2.19(c), much less "clear evidence" that they could not have done so. *See Wyeth*, 555 U.S. at 570-72 (finding no impossibility preemption where state-court jury required additional warnings on drug label and where drug manufacturer failed to offer "clear evidence that the FDA would not have approved a change to [the drug's] label" and also failed to "argue that it attempted to give the kind of warning required by the [state court] jury but was prohibited from doing so by the FDA").

Finally, the fact that the Defendants may believe (rightly or wrongly) that they could not comply with the IRC if they distributed service charges to their employees does not make it impossible to comply with both state and federal law. To the extent such a problem exists, the Defendants could, once again, include in their invoices the notice required by 12 N.Y.C.R.R. § 146-2.19(c) and avoid any conflict. *See Marsh v. Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007) ("That a . . . plaintiff . . . might find it impossible to comply with both [state and federal] statutes in some circumstances is not enough to establish an actual conflict between the two in this case.")

Nor have the Defendants met their burden of showing that they will be in violation of the IRC if they fail to include in their invoice the notice required by 12 N.Y.C.R.R. § 146-2.19(c). The Defendants have failed to meet their burden because they have not offered "clear evidence" that their interpretation of Labor Law § 196-d is correct. *Wyeth*,

555 U.S. at 571. The Defendants claim that Labor Law § 196-d prohibits them from "deducting from the service charge the employees' portion of FICA and Medicare and any federal, state and local income taxes"—something that 26 C.F.R. § 31.3306(b)-1(b) and Revenue Ruling 2012-18 requires. Docket No. 45 at 8. This argument is premised on an interpretation of § 196-d that is far from obvious.

First—and perhaps most importantly—another provision of New York Labor Law "expressly authorize[s]" "[t]he withholding of federal taxes." *Hochstein v. United States*, 900 F.2d 543, 549 (2d Cir. 1990). *See* N.Y. Labor Law § 193(a)(1) ("No employer shall make any deduction from the wages of an employee, except deductions which are made in accordance with the provisions of *any* law or regulation issued by *any* governmental agency.") (emphases added). In light of this, the Defendants offer no reason to think that the New York Department of Labor would interpret Labor Law § 196-d to prohibit the Defendants from complying with federal law by withholding taxes on service charges that are distributed to the Defendants' employees.[4]

Second, the Defendants' preemption argument fails to consider the language of Labor Law § 196-d. Section 196-d prohibits an employer from "*retain[ing]* any part of a gratuity or of any charge purported to be a gratuity for an employee." (emphasis added). The Defendants offer no reason to think that, by withholding applicable taxes from an employee's share of the service charge for remittance to the appropriate state and federal authorities, an employer has "retained" those taxes in violation of § 196-d. After all, the

---

[4] Indeed, the Defendants have not suggested that the New York Department of Labor has *ever* taken any action against an employer that distributes service charges to its employees but also withholds the necessary taxes from those charges. This fact further undermines the Defendants' ability to meet their burden of showing preemption. *Cf. Wyeth*, 555 U.S. at 571 ("[A]bsent clear evidence that the FDA would not have approved a change to [a drug's] label, we will not conclude that it was impossible for [the drug manufacturer] to comply with both federal and state requirements.")

word "retain" typically denotes having *continual* custody of an object. *See* Webster's Third New International Dictionary 1938 (1986) ("[T]o hold or *continue* to hold in possession or use: *continue* to have, use, recognize, or accept: *maintain* in one's keeping.") (emphases added); OED Online, "retain, v.," (def. 2a), Oxford Univ. Press (July 2018) (accessed November 29, 2018) ("To keep in one's own hands or under one's own control; to keep back; to keep hold or possession of; to continue to have."). By contrast, having temporary custody of an object for the sole purpose of turning it over to a taxing authority does not clearly suggest that the custodian has "retained" the object. Thus, while Labor Law § 196-d *may* be amenable to the Defendants' proposed interpretation—that is, as a prohibition on the Defendants merely withholding their employees' taxes—that interpretation is not plain from the statute's text; indeed, a credible argument can be made that the statute does not prohibit what the Defendants say it prohibits. In these circumstances, the Court cannot find that federal law preempts state law. *See Arizona*, 567 U.S. at 414-15 (declining to find that federal law preempts state law where state law could plausibly be read to avoid preemption concerns and where "[t]here is a basic uncertainty about what the law means and how it will be enforced").

For these reasons, the Defendants have failed to meet their demanding burden of showing that it is impossible to comply with both federal law and state law.

### B. Obstacle preemption

The next question is whether the Defendants have met their burden of demonstrating "[t]he second branch of conflict preemption—the obstacle analysis—[which] is in play when state law is asserted to 'stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *In re*

*MTBE Litig.*, 725 F.3d at 101 (quoting *Arizona*, 567 U.S. at 399) (brackets omitted).

Obstacle preemption "precludes state law that poses an actual conflict with the overriding federal purpose and objective." *Id.* (quotation marks omitted). There is no hard-and-fast rule for determining whether a state law poses enough of an obstacle to the execution of federal law so as to be preempted; rather, the question whether a state law is "a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Id.* (quotation marks omitted). Thus, once again, "'the purpose of Congress is the ultimate touchstone,' and 'the conflict between state law and federal policy must be a sharp one.'" *Id.* (quoting, in turn, *Wyeth*, 555 U.S. at 565 and *Marsh*, 499 F.3d at 178). Further, "[t]he burden of establishing obstacle preemption . . . is heavy: 'the mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power.'" *Id.* at 101-02 (quoting *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 241 (2d Cir. 2006) (brackets omitted and some quotations omitted)). Instead, a conflict between federal and state law has preemptive effect "'only where the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together.'" *Madeira*, 469 F.3d at 241 (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 544 (1977) (Rehnquist, J., dissenting in part and concurring in part)) (some quotation marks omitted).

The Defendants have not met their burden of showing that Labor Law § 196-d "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Arizona*, 567 U.S. at 399 (quotation marks omitted), as expressed in the relevant provisions of the IRC and Treasury Regulations. The

Defendants characterize the purpose of IRC § 3402(a)(1) and 26 C.F.R. 31.3402(k)-1 (as well as other relevant statutes and regulations) as ensuring that "disputed remuneration" is "classif[ied] . . . as service charges, as opposed to tip income," so as to ensure that the IRS "is guaranteed to get all of its money." Docket No. 33-1 at 12-13. Taking this as correct, the Defendants have not shown that Labor Law § 196-d and 12 N.Y.C.R.R. § 146-2.18 sufficiently frustrate this goal so as to be preempted.

As an initial matter, the purpose of Labor Law § 196-d, as identified by the New York Court of Appeals, is *not* to interfere with the IRS's ability to "get all of its money." Instead, the purpose of Labor Law § 196-d is "to end the 'unfair and deceptive practice' of an employer retaining money paid by a patron 'under the impression that he is giving it to the employee, not to the employer.'" *Samiento*, 882 N.E.2d at 994 n.4 (quoting Mem. of Indus. Commr., June 6, 1968, Bill Jacket, L. 1968, ch. 1007, at 4). It is, of course, "well established that the states enjoy 'broad authority under their police powers to regulate employment relationships to protect workers within the State.'" *Madeira*, 469 F.3d at 228 (quoting *De Canas v. Bica*, 424 U.S. 351, 356 (1976) (editorial marks omitted). Thus, the purpose of Labor Law § 196-d, as understood by the Court of Appeals, is to use New York State's police power to protect employees from the unscrupulous actions of their employers—Labor Law § 196-d's goal is not to frustrate the IRS's collection efforts. "A showing that the federal and state laws serve different purposes cuts against a finding of obstacle preemption," *In re MTBE Litig.*, 725 F.3d at 101, and the fact that Labor Law § 196-d has a far different purpose than the relevant provisions of the IRC weakens the Defendants' obstacle-preemption argument. Likewise, the Defendants have not identified anything in 12 N.Y.C.R.R. § 146-2.18's regulatory history suggesting that the regulation's

purpose was to interfere with the IRS's tax-collection efforts. *See Notice of Adoption: Hotel & Restaurant Wage Orders*, N.Y.S. Register, Rule Making Activities at 26-27 (Dec. 29, 2010), *available at* https://docs.dos.ny.gov/info/register/2010/dec29/toc.html.

The Defendants have also failed to show that Labor Law § 196-d, as it is actually interpreted and enforced by the New York Department of Labor, frustrates the IRS's tax-collection efforts. Labor Law § 196-d has been law in New York State since 1968, and the Department of Labor's interpretation of § 196-d, as contained in 12 N.Y.C.R.R. § 146-2.18, has been on books since January 2011. Yet, despite this not-insubstantial period of time, the Defendants have not suggested (much less identified) any instance in which the New York Department of Labor has enforced Labor Law § 196-d in such as a way as to frustrate the IRS's ability to collect all required taxes. *Cf. Arizona*, 567 U.S. at 415 ("At this stage, without the benefit of a definitive interpretation from the state courts, it would be inappropriate to assume § 2(B) will be construed in a way that creates a conflict with federal law.") This is not, then, a case in which "'the repugnance or conflict'" between federal law and state law "is so direct and positive that the two acts cannot be reconciled or consistently stand together." *Madeira*, 469 F.3d at 241 (quotation marks omitted). As noted above, Labor Law § 196-d can at least plausibly bear an interpretation that allows an employer to withhold necessary taxes from a service charge, notwithstanding § 196-d's prohibition on the employer "retain[ing]" a service charge. Moreover, as noted, New York Labor Law "expressly authorize[s]" "[t]he withholding of federal taxes." *Hochstein*, 900 F.2d at 549.

Thus, the Defendants have not met their heavy burden of showing that Labor Law § 196-d and 12 N.Y.C.R.R. § 146-2.18 stand as an obstacle to the execution of federal law.

### 4. The FLSA does not preempt Labor Law § 196-d and 12 N.Y.C.R.R. § 146-2.18

The Defendants next argue that Labor Law § 196-d and 12 N.Y.C.R.R. § 146-2.18 are preempted by the Fair Labor Standards Act (FLSA) and its implementing regulations. Specifically, the Defendants argue that the charges at issue in this case are not "tips," as that term is defined by the U.S. Department of Labor regulations and a series of DOL Opinion Letters. *See* Docket No. 33-1 at 7-8. Instead, the Defendants argue, the charges are considered "service charges" and, therefore, part of the Defendants' employees' wages. The Defendants argue that "the mandatory fees cannot be service charges—and therefore wages—under the FLSA (which they must), while, at the same time, constituting tips under New York law, as Plaintiffs assert." *Id.* at 11. The Defendants further argue that the FLSA preempts state law because "[t]he forced distribution of mandatory fees . . . upsets the FLSA overtime provisions in a dangerous and punitive fashion." *Id.* at 20.

The FLSA requires an employer to pay certain employees one-and-a-half times their "regular rate" for hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). The term "regular rate" includes "all remuneration for employment," *id.* § 207(e)(3), excluding tips "received by the employee in excess of the tip credit." 29 C.F.R. § 531.60. The Defendants claim that, by including service charges in an employee's wages, the Plaintiffs have proposed a "horribly complex [scheme]" that "creates . . . wage liability above the amount of the mandatory charge collected from the customer, a result not contemplated by the FLSA scheme." Docket No. 33-1 at 22. That

is, the Defendants argue that the Plaintiffs' claim "set[s] up a scheme that is in stark contrast to the FLSA itself, where tips are excluded from the 'regular rate' computation and service charges are not required to be distributed or to become part of the regular rate." *Id.*

The Defendants have not met their heavy burden of demonstrating that the FLSA preempts Labor Law § 196-d or its implementing regulation. First, the Defendants concede that it is possible to comply with both the FLSA and Labor Law § 196-d. *See* Docket No. 33-1 at 8 n.3 ("Employers are *not* required to remit service[] charges, as opposed to tip income, to their employees. While they may *voluntarily* convey such charges upon employees (in whole *or in part*) if they so desire, . . . they are not *required* to do so.") (emphases in original). And second, the Defendants have not shown that Labor Law § 196-d "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Arizona*, 567 U.S. at 399 (quotation marks omitted), as expressed in the FLSA. At most, the Defendants argue that compliance with both Labor Law § 196-d and the FLSA is expensive and complex. The Defendants, however, do not seriously contend that compliance with Labor Law § 196-d impedes the FLSA's purpose so much that the former is preempted. Indeed, the Defendants acknowledge that the FLSA was intended to be a "shield to protect unwary workers." *Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014) (quotation marks omitted). That is, of course, the same reason the New York legislature enacted Labor Law § 196-d. *See Samiento*, 883 N.E.2d at 994 n.4.[5]

---

[5] The Second Circuit has suggested that impossibility preemption may be found where "a state law imposes such enormous costs on a party that compliance with a related federal mandate is effectively impossible." *In re MTBE Litig.*, 725 F.3d at 101. *See also id.* (describing "economic and logistical hurdles" that might "render[] compliance" with both federal and state law impossible). The Defendants make a conclusory

Thus, the Defendants have not met their heavy burden of showing that the FLSA preempts Labor Law § 196-d and 12 N.Y.C.R.R. § 146-2.18.

### 5. The Defendants' appeal of Judge Foschio's Decision and Order

In addition to objecting to Judge Foschio's Report and Recommendation, the Defendants have appealed Judge Foschio's October 20, 2016 Decision and Order. *See* Docket No. 59. That Decision and Order denied the Defendants' motion for reconsideration of Judge Foschio's Report and Recommendation, and it also struck an affidavit the Defendants filed in support of their motion for reconsideration. The Defendants argued that the affidavit, submitted by a Michigan-licensed CPA, was not intended to introduce new facts as part of a motion for reconsideration but was, instead, meant to "elucidate the error of law and thereby demonstrate for the Court the very serious and indeed, dramatic injustice resulting from the legal ruling" in Judge Foschio's Report and Recommendation. Docket No. 58 at 3.

The Defendants label their challenge to Judge Foschio's Decision and Order as "objections" to a "Report and Recommendation," subject to *de novo* review. This is incorrect: "The Court must review [a] magistrate judge's orders with respect to any non-dispositive motions—here, for example, the [defendant's] motion for reconsideration—only upon appeal by a defendant," and pursuant to 28 U.S.C. § 636(b)(1)(A). *Ayers v. Esgrow*, 12-CV-656(LJV)(LGF), 2017 WL 815262, at *3 (W.D.N.Y. Mar. 2, 2017) (citation omitted). *See also Lacny v. Chesapeake Energy Corp.*, Civil Action No. 11-0405, 2012

---

argument that "the scheme proposed by Plaintiffs is horribly complex and creates, under the facts at bar, wage liability above the amount of the mandatory charge collected from the customer." Docket No. 33-1 at 22. The Defendants, however, do not develop this argument in any meaningful way, and they certainly do not provide the detail needed to meet their demanding burden of showing that federal law preempts state law.

WL 2158729, at *1 (W.D. La. June 13, 2012) (identifying a magistrate judge's order denying a motion for reconsideration as a non-dispositive order for purposes of the Federal Magistrates Act). As a result, the Court's review of Judge Foschio's Decision and Order is not *de novo*.

Rather, the Court reviews Judge Foschio's Decision and Order to determine whether it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). A non-dispositive order is clearly erroneous "only if," after "considering the entirety of the evidence," the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y. 2013) (quotation marks omitted). And a non-dispositive order is contrary to law if the order "fails to apply or misapplies relevant statutes, case law, or rules of procedure." Id. (quotation marks omitted). "This standard is highly deferential." *Id.* (quotation marks omitted). Thus, a district court may not reject a magistrate judge's non-dispositive order "merely because the [district] court would have decided the matter differently." *Rubin v. Valincenti Advisory Svcs.*, Inc., 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007).

The Defendants have not shown that Judge Foschio's Decision and Order was either clearly erroneous or contrary to law. First, Judge Foschio did not clearly err in striking the affidavit submitted with the Defendants' motion for reconsideration. Judge Foschio identified the affidavit as an improper attempt to relitigate his Report and Recommendation. That conclusion is comfortably supported by the contents of the affidavit: As Judge Foschio observed, the affidavit "reacts to each" of Judge Foschio's legal conclusions in the Report and Recommendation and "provide[s] [the affiant's]

opinion as to the correctness of the R&R." Docket No. 59 at 6 & n.1. This conclusion, as well as Judge Foschio's decision to strike the affidavit, is neither clearly erroneous or contrary to law.

Second, Judge Foschio properly stated the well-settled standard for reconsideration (Docket No. 59 at 4), something the Defendants do not question. Moreover, Judge Foschio's decision to deny reconsideration was not clearly erroneous because, as the Court concluded above, the conclusions in Judge Foschio's Report and Recommendation were correct under a *de novo* standard of review.

Judge Foschio's Decision and Order (Docket No. 59) is therefore affirmed.

## CONCLUSION

For the reasons stated above, the Defendants' objections to Judge Foschio's Report and Recommendation are overruled, and the Court adopts Judge Foschio's Report and Recommendation (Docket No. 50) in its entirety. Further, the Court affirms Judge Foschio's Decision and Order. *See* Docket No. 59. The Defendants' motion for judgment on the pleadings (Docket No. 33) is therefore denied. This case is recommitted to Judge Foschio for further proceedings consistent with the original referral order.

**SO ORDERED.**

Dated: January 2, 2019          __*s/Richard J. Arcara*_____
    Buffalo, New York          HONORABLE RICHARD J. ARCARA
                                  UNITED STATES DISTRICT JUDGE